Carr, J.
The question is, whether the plea demurred to be a good bar or not 'l The question depends on the construction of the statute of 1794 for the relief of sureties, and is one of the first impression. In the construction of statutes, we are told, we must first look to the mischief, and then to the remedy, and so administer the law as to advance the one and suppress the other. The mischief this statute was made to remedy, was, that a creditor having his debt secure, and being careless whether he made it out of the real debtor, or the surety, would often delay to sue till the debtor *159 became insolvent, and the whole burden was thrown on the surety, nor had he any mode of protection, but by the tedious and expensive proceeding of a bill quia timet in equity. The remedy which the statute gives instead of this, is a written requisition to the creditor to sue; and if after receiving this, he chooses to give indulgence, it is at his own risk. The object of the statute being protection to the sureties, we must to that end, give it a liberal construction; more especially, as it is to take the place, in a measure, of the equitable remedy, and is itself founded on equitable principles. In this case, the creditor was required to sue by three of the sureties, and delayed to do so, for an unreasonable time; in consequence of which delay, the three sureties who joined in the requisition, have been discharged by a judgment, from all liability. This is stated in the plea, and admitted by the demurrer. It is contended, that this does not discharge the defendant, because his intestate did not join in the requisition upon the plaintiff to bring suit. If we take the statute literally, it would seem to require, that where there are more sureties than one, all shall join in the requisition; for the words are “where any person or persons shall become bound as the security or securities in a bond &c. and shall apprehend that his or their principal is likely to become insolvent &c. it shall be lawful for such security or securities to give notice &c.” Yet this construction would in a great measure defeat the remedy, as it would put it in the power of one where there were many sureties, to prevent the notice, by refusing to join. Indeed, such a construction was not contended lor. If wo look at the object and reason of the law, it would seem, that a notice to sue by a part of the sureties, would be as effectual, as one given by them all. The purpose is to inform the creditor, that there is danger to the sureties in his further indulgence, and that if he gives it, he must do so at his own hazard. The statute authorizes the sureties to give the notice, when they apprehend, either that the principal is likely to become insolvent, or to migrate from the state: now, suppose the sureties to live at a distance, and that one of them chances to discover that the debtor is on *160 the eve of leaving the state, and gives the creditor such notice as would enable him, by a prompt movement, to arrest him and get bail] but he takes no step, and the debtor migrates : can it be imagined, that he would be afterwards suffered to recover the debt of those sureties who gave him no notice? Yet the words of the law are the same in both cases, and so is the reason. Again, we know that there is a principle of the common law attaching to all joint obligations, by which a discharge of one obligor is a discharge of all. If it be said, that this principle contemplates some act done by the obligee, I admit it, but I hold that in this case there was such an act. The statute makes it the business of the sureties to keep a watch upon their principal: the creditor is not obliged to move, till he receives notice; and if then he promptly puts the bond in suit, gets his judgment, and issues his execution in the usual course, the sureties remain just as liable as if no notice had been given. It is not the notice, then, which discharges the sureties; but (says the statute) unless the creditor so required to sue, shall in a reasonable time commence an action on the bond &c. he shall forfeit the right to recover of the sureties. This, therefore, is the operating principle in the discharge of the sureties; this unreasonable delay, this culpable indulgence given to the debtor after notice to sue, is the act which forfeits the creditor’s right to recover of the sureties; in other words, releases them from the debt. The act of the obligee, then, in the case before us, having released the three sureties who gave him notice, how can it be doubted, that the common law principle applies, and discharges the defendant here ? It is very clear, the legislature thought this principle applied, or it would not have provided against its affecting the right of the creditor to recover of the debtor himself. There is another ground, on which I think the defendant discharged. The well established rule of equity, adopted also by courts of law, is, that if the creditor takes any step, or does any act, by which he changes the situation of the surety, without his assent, the surety is released. We know, that every surety paying the debt, has a right to call on his co-sureties *161 for contribution: this is a vital element in his contract, that at the worst he shall only pay his rateable proportion. Now, by the unreasonable indulgence given by the creditor here to the debtor, after she was required to sue, she has released three of the sureties ; they are wholly free: and if in this suit there should be a recovery against the defendant, he will have to pay the whole debt, without a right to call upon his co-sureties for contribution. This important change in his liability, having been effected by the act of the creditor, he is wholly discharged. Therefore, on every ground, I think the plea presents a good bar, and that the judgment of the circuit court should be reversed, and that of the county court affirmed.
Cabell and Brooke, J concurred.
Tucker, P.
The first question is, whether the defence set up in the plea, supposing it well pleaded, is a good bar ?• The real defence is founded on a well established principle of the common law, that if one of several obligors is discharged by the act of the obligee, as by release, breaking off his seal &c. the other obligors are also discharged. The reason is, that they did not engage to incur the obligation singly; each looked to the aid of his co-obligors. Therefore, when the obligee discharges one, he changes the contract, and unless it be a discharge to all, he would thus bind the others by a new contract without their assent. This cannot be allowed; and, therefore, his discharge of one is a discharge of all. Again, if a joint suit be brought, a joint judgment must be recovered; which cannot be if one be discharged; nor can suit be brought without joining him who has been discharged. And again, if a joint judgment be recovered against all, and one of them pays it, he may compel the others to contribute; but he who has been discharged, cannot be compelled to contribute; and so the obligee, by discharging one, has taken away the right of the others to call on him for contribution. The creditor cannot recover judgment for the supposed proportion of those who *162 have not been discharged; for, if the debt has in no part been paid, judgment must be rendered for the whole. In short, where parties are thus bound together, the privity between them gives to each, the advantage of any release, or any eounter security, which the others may obtain.
The question in this case, then, is whether the discharge of the three sureties, has been effected by the act of the obligee ? I think it has. The statute, indeed, says the sureties giving the notice and making the requisition on the obligee to bring suit, shall be discharged, unless the obligee bring suit in a reasonable time. If he does not bring the suit, they are discharged, The omission to bring suit is the act of the obligee, and so the discharge is the consequence-of his act. If it were otherwise, the most unjust consequences would follow. For, before the statute, any one of several sureties might file a hill quia timet in equity; and, upon the plain construction of the statute, I take it, that any one of several sureties may require the creditor to commence his action. Then, so soon as the bond has become payable, any one surety might absolve himself, by a notice to the creditor requiring him to bring suit, without any notice to his coobligors ; or all but one might join in the notice to the creditor, and in the end throw the whole burden upon him who never dreamed of it. The effect of this would be a scramble among the sureties to get clear, as soon as the bond falls due, lest others should get clear first.
The only seeming difficulty is, that in the view we take of the case, one surety is enabled to hurry the suit of the creditor against all. But I think that no objection. The creditor may take a new bond if he is disposed to give time; if not, let him sue. There is no doubt, any one surety has a right, by bill quia timet, to compel the creditor to proceed, even when he apprehends the insolvency, not of the principal only, but of a co-surety.
There is a plain difference between this case and that of a covenant not to sue one of several obligors. Notwithstanding the covenant not to sue, the obligee may sue all, and recover judgment against all; each is bound to pay his *163 proportion; and then the covenantee recovers back what he has been compelled to pay. But in the case of a release or discharge of one, it is a bar to the action against all or any, and may be so pleaded. There can be no recovery against the release; and, therefore, either there can be no recovery against any of the obligors, or the burden must, contrary to the contract, fall upon those who are not released, and they cannot have contribution. So here, the creditor having, by his own conduct, lost all right of recovery against three of the sureties, and thus debarred the fourth of his remedy over against them, the fourth is also discharged. For, by force of this statute, the omission of the obligee to sue upon the requisition of the three sureties, was equivalent to a release of those sureties.
As to the particular objections to the plea, it is sufficient to say, that I hold it well enough pleaded, upon general demurrer to it.
Judgment of the circuit court reversed, and that of the county court affirmed.